## CONTEE *vs.* COOKE.

1807.
DECEMBER.

APPEAL from the Court of Chancery. The appellant, by his bill of complaint filed on the 24th of April 1800, stated that *Richard Wootton*, on the 5th of August 1791, assigned to him, for a valuable consideration, a bond executed by *Benjamin Burgess*, (since deceased,) and by *Thomas Tongue*, his security, dated the 21st of April 1789, conditioned for the payment of £301 12 9 current money. That suits were commenced on the bond in the general court, and a judgment was obtained against *Tongue* at May term 1793; but *Burgess*, dying before the judgment court, leave was given to issue a summons against *Agnes Burgess*, his administratrix. That the complainant was frequently applied to by *B. Burgess*, in his life-time, to resort to *Thomas Lane* for payment, against whom *Burgess* had a judgment, obtained in the name of *Richard Harwood* for his use, in the general court at October term 1799. *B. Burgess*, as the complainant understood, was much involved in debt, and alleging that he wished to pay by this judgment, the complainant was induced so far to comply with his request as to go to *Lane*, and to put himself to some inconvenience, expense and trouble, to receive tobacco and cash, to be applied towards payment of his claim against *Burgess*. That the complainant received a letter from *Burgess*, dated the 16th of October 1792, requesting him to meet at the house of *Lane* on the Thursday then next, to settle. That the complainant accordingly met, and received from *Burgess*, which he had received from *Lane*, and paid to the complainant, 1637 lbs. of tobacco, at 35s per hundred, and £74 6 1 cash, which was by mistake calculated to make together the sum of £104 16 6, for which he gave *Burgess* a receipt, dated the 23d of October 1792, and for which sum *Burgess* also gave a receipt to *Lane*. That the complainant, on his return home on the 25th of the same month, entered the payment on his day book as of that date, as it was his custom to do on his store books when he received money during his absence from home; but that it was entered for the correct amount of the money and tobacco, to wit, £103 16 6. That the complainant, after discovering the mistake, and wishing to furnish a statement of his account, sent his account against *Burgess* and *Tongue*, in which he charged them

Contee
vs
Cooke
On a bill in chancery to be relieved against a verdict and judgment, it appeared that the application in effect was, that the chancellor act as a tribunal of appeal from the verdict. There was stated no surprise on the complainant whilst defendant at law; no discovery of testimony since the trial, and no sufficient proof of fraud. Decreed, that the facts set forth in the bill were not sufficient to warrant the court to interpose and grant the relief prayed. Where certain circumstances, with the testimony of one witness, were not sufficient to refute the defendant's answer.

with the sum due on the judgment, and credited them, under the date of the 25th of October 1792, with the quantity of tobacco and cash, under the heads of tobacco account and cash account, amounting together to the sum of £103 16 6; but he expressly alleges. that the sum for which he gave the receipt, and the sum which he gave credit for in the account rendered, were for the same tobacco and money, and were one and the same, except the mistake in the calculation, and that he never did receive both sums separately, nor any further sum in the month of October 1792, more than is credited in his account against *Burgess* and *Tongue*, that is to say, £103 16 6, from *Burgess* and *Tongue*, or any one on their account or behalf. That *Burgess* relied entirely on *Lane* for payment of this judgment to the amount of his judgment against *Lane*; that he was not in circumstances to make payment himself without difficulty, and that he never was in the habit of making several payments in so short an interval, to the complainant's knowledge. The complainant states, that another payment was made to him in February 1793, by the purchase of a negro man from *Lane*, for £79 18 9; and that *Burgess*, in his life-time, never set up or claimed a credit on the receipt, and on the account rendered also, as separate payments, but acquiesced in the balance, as stated by the complainant; and the complainant does not believe that he left any paper or memorandum specifying such a claim. That after the death of *Burgess*, which happened before December 1793, he received from his widow, *Agnes Burgess*, (now *Agnes Cooke*, the defendant,) on the 10th of December 1793, as appears by her account, the sum of £51, by the purchase of a negro boy at a public sale of her intestate's property, which was done by him to accommodate the administratrix. The complainant was applied to at the sale to consent to the property being sold on a credit, which he agreed to for the benefit and convenience of the administratrix. That he afterwards, on the 25th of March 1795, received from *Tongue*, the security, the sum of £37 9 0, and from *Lane*, in August 1795, the further sum of £153 7 2. The complainant admits that the several sums amounted together to £9 13 8 more than the balance due on the judgment against *Lane*, out of which the complainant was to be paid, but he alleges that they were not all received by him on account thereof, but that he had an

order from Bishop *Claggett* to collect and receive from *Agnes Burgess* a sum of money due on a judgment to *Claggett*, on which account he also received afterwards from *Charles Cooke*, (who intermarried with *Agnes Burgess*,) tobacco and money to the amount of £50 4 0, as appears by an account exhibited, by which a balance appears to have been due from the complainant of £1 10 5½, which he has been and still is ready to pay. That after the intermarriage of *A. Burgess* with *Cooke*, the personal estate of *B. Burgess*, being insufficient for the payment of his debts, and *Thomas Tillard* having a claim against the estate, they put into his possession the papers belonging to the estate, with a view to his discovering any debt that might be due thereto, and the complainant received from *Tillard* a letter dated the 29th of October 1795, stating that a balance was still due from the complainant on the sum received for *Lane's* judgment of £20, and desiring payment thereof; but the complainant not admitting the sum to be due, refused to pay the same, and afterwards a suit was instituted in the general court by *Cooke*, and *Agnes* his wife, against the complainant, for money had and received, in order to recover back the sum alleged by them to be overpaid. That *Cooke* and wife rendered to the complainant an account made out by *Tillard*; the charges in which account of £103 16 6, £79 18 9, £50 5 0, £87 9 0, and £153 7 3, are the same as those above admitted by the complainant, but he expressly alleges that the charge of £15 5 6, charged by them in the account, was for a hogshead of tobacco received by him on a judgment by *A. & B. Contee* against *B. Burgess;* and that the charges in their account of £104 16 6, and £103 16 6, are for one and the same payment in the manner above stated. That while the suit against him was depending, the papers of the plaintiffs at law were by their counsel delivered to the counsel of the complainant, (the defendant in the suit,) to examine, and were by him given to *A. Contee*, who took a copy of the account, and returned all the papers to the plaintiffs' counsel. The complainant expressly declares, that he delivered to his counsel a receipt which he, the complainant, had obtained from *Barbara Lane*, one of the executors of *T. Lane*, which was a receipt from *B. Burgess* to *T. Lane* for the said sum of £104 16 6, or near that sum, for which the complainant had given to *B. Burgess* a receipt dated the 23d of Octo-

ber 1792. That the complainant's counsel, *William Cooke,* Esquire, left the court before the expiration of October term 1799, and (before the complainant saw him that term,) engaged other counsel, to wit, *William Kilty,* Esquire, and put the papers into his hands, informing him that some of them belonged to the plaintiffs; and the complainant is informed and believes, that the counsel for the plaintiffs, *John T. Mason,* Esquire, had access to the papers in the hands of *William Kilty,* Esquire, and took therefrom such as he alleged to belong to his client. But at the trial court the receipt for £104 16 6, or near that sum, was not to be found, nor the account drawn off by *Tillard;* on which Mr. *Mason,* on the trial, declined at first to act as counsel, but employed another attorney, intending to give testimony as to the papers; but the complainant not knowing what was become of the papers, and wishing for nothing more than a fair trial, admitted that such papers had existed, to wit, a receipt from him to *B. Burgess,* and also from *B. Burgess* to *T. Lane,* for £104 16 6, or near that sum, dated the 23d of October 1792; and an account drawn off by *Tillard.* That at the trial the deposition of *Barbara Lane,* taken by consent, was read, in which she stated that the complainant had procured the last mentioned receipt from her, the purport of which she did not know, and that the same had not been returned, and that that circumstance, and the loss of the other papers, was artfully and unjustly made use of in argument to injure the complainant's character, and to influence the determination of the jury The complainant solemnly declares that he did not wish or design, nor did he know that any of the papers were missing or lost before he came to the trial court, October term 1799, and when he was informed the papers were wanting, he admitted of such papers having existed. He was at court several days, and at length was so much indisposed, that he left the court, and was informed the trial came on next day when he was absent. The complainant is informed that *Tillard* was examined as an evidence for the plaintiffs, having declared, when examined on the *voir dire,* that he was not interested in the event of the suit, although he declared in the course of his testimony that he had a claim on the estate of *Burgess,* and had obtained an order to receive what might be due from the complainant in payment thereof, which ap-

pears by his letter to the complainant of the 29th of Oc-
tober 1795. That evidence was also given at the trial of
the above mentioned payments in tobacco and money, which
were never made, in discharge of the judgment by Bishop
*Claggett*, and of the tobacco due to *A. & B. Contee* on
judgment, which the complainant had no means of
proving, the application thereof resting solely in the
knowledge of the plaintiffs; and that a verdict on the
trial, was given in favour of the plaintiffs for the sum of
£203 4 6 current money damages, and $15 and 1324 lbs.
of tobacco, costs. The complainant states, that he is well
convinced that the claim aforesaid would never have been
brought against him if *B. Burgess* had lived, for he be-
lieves, that so far from there being any account or papers
left by him to prove the justness of the claim, his books
and papers, if produced, would show that no such claim
existed, and that the judgment has been unjustly reco-
vered. *Prayer* for an *injunction*, and relief, &c. The ac-
counts and judgments referred to in the bill were all ex-
hibited. The chancellor granted an *injunction* agreeably
to the prayer of the complainant. The answer of *Agnes*
*Cooke*, and *Charles Cooke*, her husband, against whom his
wife *Agnes*, the bill was filed, having since died,) admitted
the bond executed by *B. Burgess*, &c. That in discharge of
the bond, on the 15th of April 1792, there was paid in
tobacco, valued at 32s 6d pr. cwt. the price agreed on, and
including the cask, the sum of £15 5 6, and on the 23d
of October 1792, by *B. Burgess*, the sum of £104 16 6,
for which he obtained the receipt of the complainant.
That *Lane* was indebted to *Burgess*, and that *Lane*, at
the request of *Burgess*, on the 25th of the same month
and year, in discharge of the claim, paid in money and
tobacco the sum of £103 16 6; that *Lane* also paid on the
25th of February 1793, the sum of £79 18 9, leaving a
balance due on the 10th of December following in favour
of the complainant, and including interest, the sum of
£74 15 8. That after the death of *B. Burgess*, and be-
fore she obtained a true knowledge of the transaction, and
had ascertained the sum due, the following payments were
made, to wit, £50 5 0 for a negro boy sold to the com-
plainant on the 10th of December 1793, £37 9 0 paid him
on the 25th of March 1795, and £153 7 3 on the 29th of
August 1795, and which payments she afterwards disco-

1807.

Contee
vs
Cooke

vered greatly exceeded the balance due the complainant from her deceased husband. That she knows no other claim of the complainant on *Burgess's* estate, either in his own right, or as the assignee of any other of his creditors, and that the different payments were made in discharge of the above mentioned debt; that the complainant, when it was discovered he had been overpaid, did not refuse to refund on the ground that he had other claims, but because he alleged that he had not received the two sums of £103 16 6 and £104 16 6; that the defendant, to obtain back the money which had been unjustly paid, was obliged to bring suit in her name, and in the name of *Charles Cooke* her husband, and at October term 1799, by the verdict of a jury, obtained a judgment for the sum of £203 4 6, that being the sum, including interest, which had been overpaid and exceeding any just claim of the complainant. That she is informed that any defence the complainant had against her demand, either because he was charged with more money than received, or that the money was to be applied to other claims due him in any capacity whatever, were subjects for the decision of the court and jury, and the defendant, to support her claim there, was obliged to resort to disinterested evidence, according to the rules of law; that the complainant had there every advantage the law recognizes of objecting to evidence, and cannot here, because he alleges improper evidence was received, defeat the effect of the verdict. She knows of no other claim by the complainant against her husband's estate, to which he had a right to apply any of the payments; she trusts that a court of equity will not, after an administratrix had paid monies supposing them due, when it is discovered they were not due, and when a verdict and judgment are obtained for the same to be refunded, prevent her from obtaining the benefit of such verdict and judgment. A general replication was entered to the answer; and the *injunction*, on the motion of the defendant, was *dissolved* by the chancellor on the 15th of February 1803. A commission issued, under which testimony was taken, and the accounts between the parties were stated by the auditor.

The testimony taken was that of *David Weems*, who deposed that *Charles Cooke*, who married the widow of *B. Burgess*, before the institution of the suit by him and wife against *Contee*, came to the deponent and asked him to as-

sist him in stating an account against *Contee*, but before they began to state the account, he related some circumstances in this manner, that they had *Contee's* receipt for £104 odd shillings, and also *Contee's* account, wherein there was a sum credited of about 20 shillings less than the receipt expressed, two days after the date of the receipt, which two sums he said were but one payment, *agreeably to the information he had received from his wife.* From that information the deponent refused to have any thing to do with it, or any hand in stating the account. In the course of conversation with *Cooke*, he objected to a sum charged in the account by *Contee* for commission; that on his account against *Contee* the balance was over £15, but he would take 40 dollars, and give a full discharge for the same.

The case being argued by the counsel concerned,

HANSON, Chancellor, at June term 1804, by his decree states, that "it appears to him that the application of the complainant in effect is, that the chancellor act as a tribunal of appeal from the verdict of a jury. There is stated no surprize on the complainant, whilst defendant at law; no discovery of testimony since the trial at law. There is no sufficient proof of fraud. As to that part of the deposition which has been considered as evidence of fraud, there is the answer of a defendant denying it; and the established principle of equity, respecting answers which defendants are compellable to give, is well known." *Decreed,* that the bill of the complainant be *dismissed,* but without costs. From this decree the complainant appealed to this court.

The cause was argued before CHASE, Ch. J. TILGHMAN, BUCHANAN, and GANTT, J.

*T. Buchanan,* and *Magruder,* for the Appellant, contended, 1. That the court of chancery might decree against the answer upon the testimony of one witness, where there were circumstances concurring with the testimony They cited 1 *Harr. Chan. Pr.* 106. *Sudg. L. V.* 504. *Arnot vs. Biscoe,* 1 *Ves.* 97. *Le Neve vs. Le Neve,* 3 *Atk.* 650. *S. C.* 1 *Ves.* 66. 2. That a court of chancery might relieve against a verdict and judgment, where injustice had been done at law. *Countess of Gainsborough vs. Grif-*

1807.
Grant
vs
Ridsdale

*ford*, 2 *P. Wms.* 426. 2 *Eq. Ca. Ab.* 245. Bunb. 178. *Kent vs. Brigman, Pre. in Chan.* 233. *Ambler vs. Wyld*, 2 *Wash. Rep:* 36. *M'Rae vs. Woods*, Ibid 80. *Cochran vs. Street*, 1 *Wash. Rep.* 79. 3 *Morg. Ess.* 90. 2 *Morg. Ess.* 16.

*Johnson*, (Attorney General,) for the Appellee, referred to *Gover vs. Christie & Jay*, (*ante* 67;) and *Garretson vs. Cole*, 1 *Harr. & Johns.* 370.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the facts set forth by the complainant in his bill of complaint, are not sufficient to warrant the court of chancery to interpose and grant the relief prayed by the complainant.

DECREE AFFIRMED.